IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.

No. CR-01-821 MV

KARL RASCON,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Karl Rascon's Motion to Suppress Evidence **[Doc. No. 19]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

### BACKGROUND

On February 6, 2001, Defendant was talking with Dolores Lucero outside her home at 2224 Rio Grande NW in Albuquerque, New Mexico. Defendant had been driving a white Toyota pickup truck that was parked on private property near the home.

At approximately 10:23 p.m., Albuquerque police officers Steve Picchone and Marvin Brown were called to a domestic violence incident at 2224 Rio Grande NW. The dispatch unit informed the officers that a man and a woman were fighting at this address. Arriving at that location, the officers noted two homes on the property – one in front and a smaller quarters in back. The house number of the former was 2224 and that of the latter was 2224 ½. The officers saw Defendant and a woman talking in the driveway of the house at the front. Both officers testified that they had been previously called out to this location and knew there were two houses



at this address. At approximately the same time that one or both of the officers approached, Defendant completed his conversation, started his vehicle, and began to leave the home. The officers stopped Defendant, identified themselves as law enforcement, and asked Defendant to step out of the vehicle. Defendant complied. Officer Picchone asked Defendant for identification, which Defendant provided by reaching into his back pocket to retrieve it. Officer Picchone then asked Defendant to place his hands behind his head and proceeded to conduct a pat-down search of Defendant's person. Again, Defendant complied with the officer's instructions. During the pat-down search, Officer Picchone found a switchblade in Defendant's front right pocket. Picchone informed Defendant that he was investigating a domestic violence call. Defendant stated that he and Ms. Lucero had not been fighting. Defendant then was placed under arrest for possession of the switchblade, a petty misdemeanor under state law for which police may either execute an arrest or issue a ticket.

After placing Defendant in handcuffs, Officer Brown remained with Defendant near the rear bumper of the pickup truck, while Officer Picchone walked to the front of the pickup truck and looked inside the passenger side window with his flashlight. Officer Picchone saw a police-style baton lying on the passenger side floor of the pickup truck and the back end of a wood-handled weapon on the driver's side floorboard. Picchone then went to the driver's side of the vehicle, opened the door, and retrieved the weapon which turned out to be a modified rifle. According to Officer Picchone, when the officers asked Defendant where he had obtained the gun, Defendant said that he had purchased it from an unknown Brew Town gang member.[1]

---

[1] Defendant's testimony was that he bought the gun from someone from the Brew Town community.

Only after these events transpired did the officers realize that the domestic violence call to which they had been dispatched concerned residents in the home behind the main house. Neither Defendant nor Ms. Lucero was involved in the incident that prompted that call or had sought assistance from the police on any domestic matter that evening.

Defendant seeks suppression of the weapons and his statements on the grounds that they were found only as a result of an illegal search.

## DISCUSSION

In *Terry v. Ohio*, the Supreme Court recognized that, "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security" that must conform to the dictates of the Fourth Amendment. *Terry*, 392 U.S. 1, 24-25 (1968). At the same time, the Supreme Court acknowledged "the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Id.* at 24. The Court struck a balance between the need to protect an individual's constitutional rights and to ensure the safety of law enforcement by carving out a "narrowly drawn" exception to the Fourth Amendment's probable cause requirement for arrests, where law enforcement carried out seizures of a person that did not amount to full arrests. *Id.* at 27. Under *Terry*, police officers are allowed to conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Id.*

In the present case, the investigating officers lacked any particularized, articulable and reasonable suspicion that Defendant was armed or dangerous. Although both officers indicated that the *Terry* search was conducted for "officer safety," neither officer provided any reason for

-3-

believing Defendant might pose a threat aside from his belief that Defendant was involved in the domestic violence call. During the government's direct examination, Officer Picchone testified as follows:

> Q. You asked [Defendant] to put his hands on his head?
> A. Yes, behind his head.
> Q. Behind his head? For what reason?
> A. So I can conduct a *Terry* search for any weapons, for my personal safety.
> Q. Now, why did you do that?
> Q. On most domestic violence calls, officers have the highest rate of being killed or injured.

While it may be true that officer safety is a general concern in domestic violence calls, the officers here had no basis to believe that *this particular* individual posed any threat to them or to Ms. Lucero. The initial dispatch call did not mention that weapons were or might be involved in the domestic violence. Additionally, Officer Picchone testified that when he and Officer Brown first arrived at the scene, they observed a male and a female "talking" near a Toyota truck and that although he "could not hear if they were arguing or not, . . . [i]t just appeared that they were talking to each other." There was no evidence that the officers observed any pushing, yelling or any kind of angry behavior. When the officers informed Defendant that they were investigating a domestic violence call, he corroborated their earlier observations and stated that he and Ms. Lucero had not been fighting. Moreover, when the officers finally were within arm's length of Defendant, Officer Picchone testified that Defendant was fully cooperative and did not appear under the influence. Perhaps most telling is the fact that when Officer Picchone requested identification from Defendant before conducting the pat-down search, he permitted Defendant to reach into his back pocket and retrieve his identification himself. During cross-examination by Defendant's attorney, Officer Picchone testified as follows:

> Q: When you asked [Defendant] for his ID, he gave it to you?
> A. Yes, sir.
> Q. And when he did that, he reached into his pocket to do it, didn't he?
> A. Back pocket, sir.
> Q. He reached into his back pocket, right?
> A. Yes, sir.
> Q. And he took it out?
> A. Yes, sir.
> Q. He could very well have taken out a weapon?
> A. Yes, sir.
> Q. But you allowed him to reach into his back pocket, didn't you?
> A. At the time to get his ID for me, yes.

Defendant was not told to keep his hands visible at that time and the officers, despite their alleged concerns about safety, did not seek to retrieve Defendant's wallet or identification from his pocket themselves. It is incomprehensible that the officers would have allowed Defendant to reach into his own pockets if they truly believed that he posed a threat to their or Ms. Lucero's safety.

In the end, the only reason the officers had for conducting the *Terry* search was a report from an address that the officers knew had two houses on the lot, which report was not corroborated by the officers' observations of the Defendant and Ms. Lucero as they approached, and their knowledge or experience about the dangerousness of such situations *in general*. However, a *Terry* search contemplates only "a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief, based on '*specific and articulable facts*,' and not on a mere 'inchoate and unparticularized suspicion or "hunch"', that he is dealing with an armed and dangerous individual.'" *Maryland v. Buie*, 494 U.S. 325, 332 (1990) (citations omitted) (emphasis added).

The testimony offered in this case and the facts surrounding the search of Defendant's person make clear that the officers did not possess "specific and articulable facts" that would support a *Terry* search of this Defendant in this specific instance. *Accord United States v. Melendez-Garcia*, 28 F.3d 1046, 1052-53 (10th Cir. 1994) (although "[d]rugs and guns and violence often go together," police offered no evidence or testimony indicating "reason to believe these particular suspects had guns or were violent" so as to warrant handcuffing during *Terry* stop). In fact, the conjecture on which the investigating officers' actions were based are far more consistent with the "inchoate and unparticularized suspicion" that the Court condemned in *Buie*. *See also United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000); *United States v. Davis*, 94 F.3d 1465, 1468-69 (10th Cir. 1996).

Without any articulable basis to conduct the *Terry* search, the officers exceeded what is constitutionally permissible under the circumstances. Accordingly, the switchblade found as a result of the pat-down search must be suppressed. Just as the officers lacked adequate grounds to conduct a pat-down search of Defendant's person, they did not have sufficient reason to search Defendant's vehicle which, as Officer Picchone indicated, was parked on private property. Therefore, the gun found in the truck also must be suppressed. Although the government has argued that the gun inevitably would have been discovered, the officers could have conducted an inventory search of the truck only if they had reason to impound the vehicle. This would not have occurred unless Defendant was placed under arrest. Because possession of the switchblade was the grounds for Defendant's arrest, and the Court has found that the switchblade was discovered after an illegal *Terry* search, the government's contention is unavailing. Finally,

since the officers had no reason to place Defendant under arrest, any statement he made also must be suppressed.

**IT IS THEREFORE ORDERED** that Defendant Karl Rascon's Motion to Suppress Evidence **[Doc. No. 19]** is hereby **GRANTED**.

Dated this 3rd day of July, 2003.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

<u>Attorney for Plaintiff</u>:
Roberto Ortega

<u>Attorney for Defendant</u>:
Roger Finzel

F:\SHARE\Anjana\Criminal\Rascon, Karl\suppress_moo