IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                          No. CR-01-821 MV

KARL RASCON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Government's Motion to Reconsider Order Granting Motion to Suppress Evidence **[Doc. No. 57]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

On February 6, 2001, Defendant was talking with Dolores Lucero outside her home at 2224 Rio Grande NW in Albuquerque, New Mexico. Defendant had been driving a white Toyota pickup truck that was parked on private property near the home.

At approximately 10:23 p.m., Albuquerque police officers Steve Picchione[1] and Marvin Brown were called to a domestic violence incident at 2224 Rio Grande NW. The dispatch unit informed the officers that a man and a woman were fighting at this address. Arriving at that location, the officers noted two homes on the property – one in front numbered 2224 and a smaller quarters in back numbered 2224 ½. The officers saw Defendant and a woman talking in

---

[1] The Court notes that the officer's name was spelled "Picchone" inadvertently in its previous opinion suppressing evidence in this case.

the driveway of the house in front. Both officers testified that they had been previously called to this location and knew there were two houses at this address.

At approximately the same time the officers approached, Defendant completed his conversation, started his vehicle, and began to drive away. The officers stopped Defendant, identified themselves as law enforcement, and asked Defendant to step out of the vehicle. Defendant complied. Officer Picchione asked Defendant for identification and allowed Defendant to reach into his back pocket to retrieve the documents. Defendant was then told to place his hands behind his head while Officer Picchione conducted a pat-down search of Defendant's person. Again, Defendant complied with the officer's instructions. During the pat-down search, Officer Picchione found a switchblade in Defendant's front right pocket. When Picchione stated the officers were investigating a domestic violence call, Defendant stated that he and Ms. Lucero had not been fighting. At that time, Defendant was placed under arrest for possession of the switchblade, a petty misdemeanor under state law for which police may either execute an arrest or issue a ticket.

After placing Defendant in handcuffs, Officer Brown remained with Defendant near the rear bumper of the pickup truck, while Officer Picchione walked to the front of the truck and looked into the passenger-side window with his flashlight. He observed a police-style baton lying on the passenger-side floor of the pickup truck and the back end of a wood-handled weapon on the driver's side floorboard. Officer Picchione could not see the full length of the latter weapon, but only the rear, handle portion. Picchione then went to the driver's side of the vehicle, opened the door, and retrieved the partially-concealed weapon which turned out to be a modified rifle. When the officers asked Defendant where he had obtained the gun, Defendant claims he said he

had purchased it from the Brew Town neighborhood in the North Valley of Albuquerque. However, the officers claim he said he bought it from a "Brew Town gangmember."

Only after these events transpired did the officers realize that the domestic violence call to which they had been dispatched concerned residents in the smaller unit behind the main house. Neither Defendant nor Ms. Lucero was involved in the incident that prompted that call or had sought assistance from the police on any domestic matter that evening.

Defendant made a motion to suppress the weapons and his statements, arguing they were discovered only through an unlawful search. On June 27, 2003, this Court held a hearing on the motion and issued an order granting the motion on July 7, 2003. On July 18, 2003, the Government filed a motion to reconsider, and Defendant filed a response on August 1, 2003.

## STANDARD

Although the Federal Rules of Criminal Procedure do not include any provisions for a motion to reconsider, Tenth Circuit courts have countenanced such a motion under the common law doctrine and considerations of judicial economy recognized in *United States v. Healy*, 376 U.S. 75 (1964). *E.g., United States v. Corey*, 999 F.2d 493, 495 (10th Cir. 1993); *United States v. Anderson*, 85 F.Supp.2d 1084, 1109-10 (D.Kan. 1999). Courts have evaluated motions to reconsider in criminal cases under the same standards governing a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *E.g., United States v. Thompson*, 125 F.Supp.2d 1297 (D.Kan. 2000). Accordingly, the Court may grant a motion for reconsideration on any one of three grounds: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. *Major v. Benton*, 647

F.2d 110, 112 (10th Cir. 1981) (cited in *United States v. Prince*, 167 F.Supp.2d 1296, 1300 (D.Kan. 2001)).

A motion for reconsideration "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484 (10th Cir. 1994). In other words, such motions are not appropriate if the movant's only purpose is to have the reviewing court revisit issues already addressed or to hear arguments or supporting facts that could have been presented originally. *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), *cert. denied*, 506 U.S. 828 (1992). On the other hand, a motion to reconsider is properly presented if "the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence." *Comeau v. Rupp*, 810 F.Supp. 1172, 1175 (D.Kan. 1992). The decision to grant or deny a motion for reconsideration is committed to the reviewing court's sound discretion. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

## DISCUSSION

The government's motion to reconsider offers two arguments. First, the government states that the arresting officers had a basis to stop and frisk Defendant. Aside from contending that a domestic disturbance call by itself provides the reasonable suspicion required for a *Terry* search, the government argues that these officers had added justification because they had "prior knowledge that Rascon and Lucero had been involved in a prior domestic dispute at the same address." *Mot. to Recons.* at 2. None of this evidence is new and was considered by the Court when it issued its prior Opinion. As stated therein, the testifying officers offered no statements at

the suppression hearing indicating they had any concerns *specific to* Defendant or the situation they encountered, on the night of the search itself, that caused them to fear for officer safety or Ms. Lucero's safety. Again, under the Constitution, police officers may not conduct a stop and frisk because of an "inchoate and unparticularized suspicion or 'hunch' that [they are] dealing with an armed and dangerous individual." *Maryland v. Buie*, 494 U.S. 325, 332 (1990) (quotations and citations omitted). Thus, the officers' knowledge that certain types of calls are *generally* more dangerous than others or that the individuals present were *previously* involved in an altercation does not constitute "specific and articulable facts" that the people then before them pose a threat, at that particular moment and at that particular location. Moreover, the officers' own testimony indicated that Defendant was fully cooperative and followed each of their orders without incident, and that when they first arrived on the scene, it was apparent Defendant and Ms. Lucero were not involved in any verbal or physical altercation.

The facts presently before the Court are no different than those at the day of the suppression hearing, and there is no clear legal or factual error in its prior ruling. The Court finds no merit to the government's claim that the officers were justified in conducting a *Terry* search of Defendant since the government has offered no new evidence indicating the officers had reasons other than their general concern for safety based on the nature of the call or their information about Defendant during a prior time.[2]

---

[2]The Court also notes that what the government refers to as a prior domestic violence incident was listed as a criminal damage to property charge in the incident report they subsequently filed. Apparently, Ms. Lucero had placed a call to the police after someone broke a window in her home. Officer Brown testified at the suppression hearing that, at the time of this prior incident, Ms. Lucero told the officers that she had seen Defendant drive away from her home and that she believed he had thrown a rock and broken the window because "she was having problems with Mr. Rascon, and it was an ongoing domestic issue with her." Officer

The second argument offered by the government for reconsideration is its position that Officer Picchione saw one of the firearms on the floorboard of the truck, in plain view, through the window of the vehicle and that this plain view observation justified his ensuing sweep of the interior of the truck. The government, however, entirely misstates or ignores Officer Picchione's testimony at the suppression hearing. Specifically, Officer Picchione stated that when he first observed part of the firearm on the floorboard of the vehicle, from his vantage point outside the truck, he could not tell whether the partially-concealed weapon was of an unlawful nature:

> Q.   Now, when you saw what you said was the butt stock and the bolt for the rifle --
> A.   Yes, sir.
> Q.   -- at that time, you could not tell whether that was illegal or not, could you?
> A.   Not at the angle that I saw it, no.

Officer Picchione testified that he opened the truck door and searched the vehicle only after seeing the baton and the end of the otherwise unidentifiable firearm.

In other words, the items that Officer Picchione did observe in plain view were, from his perspective, lawfully possessed weapons. The officers testified that, to their knowledge at the time of the arrest and search of the truck, Defendant was not a convicted felon. Furthermore, as the officers themselves acknowledged at the hearing, no state law places a blanket prohibition against carrying a police-style baton or firearm in one's vehicle. Thus, Officer Picchione's plain view observations did not reveal the presence of any items that he had probable cause to believe were unlawful or associated with criminal activity. In *Texas v. Brown*, 460 U.S. 730, 743 (1983),

---

Brown conceded at the suppression hearing that when they investigated this matter, no rock was found, although the shattered glass had fallen into the inside of the house. There was no verbal exchange or physical encounter between Ms. Lucero and Defendant during this incident, and the only indication that Defendant had broken the window was Ms. Lucero's statement.

the Supreme Court clarified that, in order to justify the seizure of objects in plain view, "the basis upon which they might be seized had to be 'immediately apparent.'" That is, "the facts available to the officer would [be such as to] warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Id.* at 742 (quotations and citation omitted). Far from possessing the probable cause required for a plain view seizure, Officer Picchione testified without hesitation that he affirmatively did not believe that the partially-concealed firearm was unlawful. An officer's plain view observations of what appear to be legally permissible weapons are no grounds for conducting a protective sweep of the surrounding environs. As the government has offered no new evidence to justify the officers' unfounded "protective sweep" of the vehicle, the Court has no choice but to deny the motion to reconsider on this grounds as well.

**IT IS THEREFORE ORDERED** that the Government's Motion to Reconsider Order Granting Motion to Suppress Evidence **[Doc. No. 57]** is hereby **DENIED**.

Dated this   15th   day of   December  , 2003.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Roberto Ortega

Attorney for Defendant:
Roger Finzel